## FISH v. BUSH et al.
## No. 5193.

Court of Civil Appeals of Texas. Amarillo.

Sept. 23, 1940.

Rehearing Denied Oct. 21, 1940.

W. S. Birge, of Amarillo, for appellant.

E. O. Northcutt, of Amarillo, for appellees.

JACKSON, Chief Justice.

This suit was instituted in the County Court of Potter County, Texas, by Ruth G. Bush, Arthur J. Dalies and James A. Bush, the appellees herein, and the trustees of the estate of W. H. Bush, deceased, against S. E. Fish, the appellant, on a note dated September 10, 1934, payable to the W. H. Bush Estate in the sum of $270.55 with interest thereon at 6% per annum on or before six months after date.

The appellant answered by general demurrer and general denial; pleaded failure of consideration and fraud based on the false representations of W. B. Simmons, the agent of James A. and W. H. Bush, and alleged that the appellees had knowledge of the fraud and failure of consideration. The appellant also alleged that James A. Bush was indebted to the estate of W. H. Bush in a sum greater than the amount of the note sued on.

The appellees in a supplemental petition without a verification thereof asserted that W. B. Simmons was not the agent of James A. and W. H. Bush or either of them and pleaded that appellant was estopped to allege fraud or failure of consideration as a defense to the note.

A jury was impaneled and the testimony introduced, after which the court peremptorily instructed the jury to find for appellees, and on the verdict so found he rendered judgment against the appellant for the sum of $376.45 with interest at rate of 6% per annum from August 25, 1939, from which judgment this appeal is prosecuted.

The appellant challenges the action of the court in directing a verdict against him, contending that the testimony raised issues of fact which should have been submitted to the jury.

The evidence tends to show that some time prior to September 10, 1927, W. B. Simmons, the nephew and agent of W. H. Bush and James A. Bush, approached the appellant and represented to him that they had acquired a section of land and with others were building a club ground and recreation center in Palo Duro Canyon at a point some twelve or fourteen miles south of the city of Amarillo; that the club had been named The Palisades, on the improvement of which several thousand

dollars had already been expended and that many thousand dollars in addition would be expended in the future for the development of the project. He represented that the lake had been stocked with fish, exhibited a map and prospectus to the appellant showing the intended location of a community house, other club houses, some bath houses, the tennis courts and a golf course; declared there would be facilities to keep saddle horses, trails constructed for horseback riding, all of which would be completed and when finished constitute the finest club property in the southwest. The appellant testified that he knew the Bushes, believed and relied on these representations and was induced thereby to enter into a written contract in compliance with the terms of which James A. Bush, on September 10, 1927, conveyed to appellant Lot. No. 13 in Block No. 111 of the Palisades for a consideration of $750 to be paid as follows: $50 cash, the receipt of which was acknowledged, and $700 evidenced by four notes due in three, six, nine and twelve months after date, respectively, and each for the sum of $175, bearing interest at the rate of 6% per annum. The record shows that the purchase of the lot entitled the appellant to membership in what was designated as The Palisades Casino and certain privileges of the grounds, club house and Casino golf course. Notes Nos. 1 and 4 were sold to the Plains Chevrolet Company and Note No. 2 was endorsed to W. B. Simmons and each of them paid and satisfied by the appellant.

The improvements were not placed on the ground as represented and Note No. 3 during the delay was barred by limitation. However, the project was not abandoned and on September 10, 1934, appellant executed the note sued on for the sum of $275.55, payable to the estate of W. H. Bush and as late as 1935 some one interested in The Palisades, which was a corporation, advised appellant that efforts were still being made to develop the property. Appellant at the time he executed the renewal note on which this suit is based did not know the project had been abandoned and did not intend to waive or relinquish his defense of fraud or failure of consideration in the event the improvements were not completed. The appellant went to appellee James A. Bush thereafter, offered to reconvey to him the lot, lose the $600 he had paid and cancel the

transaction or to pay the note sued on if the property was improved as represented. These propositions were refused and thereafter this suit instituted.

The testimony is undisputed that the lot without the improvements and the maintenance of the club as represented was "practically worthless" and as a circumstance to the lack of value of the lot purchased it will be noted that appellees do not ask for a foreclosure of the lien thereon. The facts and circumstances are far from being conclusive that the estate of W. H. Bush acquired the note sued on as an innocent purchaser for value.

It was admitted that James A. Bush was indebted to the Bush Estate in a sum in excess of the sum evidenced by the note.

The appellees' contention seems to be that inasmuch as the note sued on was a substitute for the original note No. 3 given to James A. Bush, appellant is estopped as a matter of law from urging fraud or failure of consideration arising out of the original transaction as a defense to the renewal note.

The contention upon which appellees rely, in our opinion, is not controlling under this record.

In Goodwin v. Abilene State Bank, Tex. Civ.App., 20 S.W.2d 1090, 1092, it is said: "Is this rule applicable to this case? 'Where a note is executed to a payee only in renewal of a prior note given to him, the real consideration is that for which the prior note was given, and the failure of same may be pleaded in an action on the latter note.' 8 C.J. 251. If this be a correct statement of the law, as we think it is, it necessarily follows that the fact of renewal alone does not constitute any evidence of a waiver. We question, without attempting to decide, whether renewal with knowledge of the want or failure of consideration, and without other evidence of intention, should, as a matter of law, be held to show a waiver."

In 8 C.J. 444, para. 658, 10 C.J.S., Bills and Notes, § 278, the author says:

"As between the original parties, and as against transferees who are not bona fide purchasers for value, a renewal note is open to all defenses which might have been made against the original note, at least in so far as they relate to consideration, such as want or failure of consideration, fraud, usury, gambling debts, or other illegality."

This announcement of the law is approved in Exchange Nat. Bank v. Parsons et al., Tex.Civ.App., 116 S.W.2d 817.

In our opinion the major portion of the consideration for this transaction failed, hence, there was an issue of partial failure of consideration and fraud as well as an issue of innocent purchaser for value to be submitted to a jury.

The judgment is reversed and the cause remanded.